REGAN, Judge.
Plaintiff, Bruce Bobo,[1] a steamfitter, instituted this suit against the defendants, Henry J. Kaiser Construction Company, his former employer, and its compensation insurer, Fireman’s Fund Insurance Group, endeavoring to recover maximum workmen’s compensation benefits [2] for two job-related injuries to his ankle, which precipitated a third accident and ultimately totally and permanently disabled him. He further insisted that the defendants had arbitrarily withheld compensation payments and, therefore, he requested the imposition of statutory penalties and attorney’s fees.
The defendants answered and admitted the occurrence of the first two accidents; however, they asserted that the injuries plaintiff incurred therefrom had completely healed and that his disability now emanates from a third accident which was not precipitated by the first two and which occurred several months after the plaintiff had been discharged by the defendant employer.
From a judgment in favor of plaintiff in the amount of $905.00[3] for medical expenses the defendants had previously agreed to assume, and in favor of the defendants dismissing the plaintiff’s suit in all other respects, the plaintiff has prosecuted this appeal.[4]
The record reveals that the plaintiff’s initial injury occurred on July 26, 1957, in the defendant employer’s plant when an acetylene drum which was being unloaded from a truck fell and rolled upon his left foot.
The plaintiff testified that he reported this accident to his employer who referred him for treatment to Dr. Ward Turner, the company physician, whose office was located in Lutcher, Louisiana. This injury forced him to remain home for several days; however, he attempted to return to the defendant’s plant with the assistance of crutches and was sent home until such time as he could walk without them. When he ultimately returned to work, approximately a week later, he was assigned to lighter duties which entailed the operation of a power saw.
The second accident occurred on August 28, 1957. The plaintiff testified that with *245 the assistance of two other workmen he was attempting to raise a 250 pound valve to a pipe-threading machine when the hoist holding the valve slipped, causing it to fall on the plaintiff’s left foot. He asserted his toe was crushed and his ankle re-injured and although he reported the accident, the company refused to send him to Dr. Turner for treatment thereof.
The plaintiff related that despite the fact he continued to experience pain in his left ankle, he continued to pursue his trade until October 15, 1957, when the defendant discharged him and many other workmen for the purpose of reducing the plant’s work force.
In November, 1957, the plaintiff testified that he consulted Dr. Blaise Salatich, an orthopedist, in order to obtain treatment for his injured ankle. Dr. Salatich related that he found it necessary to apply a long plaster cast thereto. As the result of wearing the cast, the plaintiff experienced another accident on January 3, 1958, when he fell down a flight of stairs in his home in New Orleans and incurred a fractured thigh. As a result thereof, he was hospitalized for approximately two months.
The plaintiff testified that he has been unable to perform strenuous work or obtain employment since he was discharged by Kaiser because of his disability; that his left ankle has never healed since the 1957 accidents and that it always remains in a swollen condition.
The evidence reveals that the defendants paid the plaintiff workmen’s compensation until August 25, 1959. Twice prior to this date the defendants had discontinued payments thereof; however, when the plaintiff instituted suit against the defendants for past due compensation, he was paid therefor on each occasion and he in turn dismissed the suits. Thereafter the defendants terminated compensation for the third time, predicated on the theory that his disability did not emanate from any injury incurred on the job, hence this suit.
In order to substantiate as a fact the plaintiff is still disabled as result of the accidents which occurred in the summer of 1957, Dr. Blaise Salatich appeared to testify on his behalf.
He related that the plaintiff first consulted him on November 11, 1957, and at the time he was using two crutches to help support his weight and he also appeared to be favoring his left foot and ankle. Since the ankle was swollen, the doctor said he used elastic bandages to reduce the swelling and when this was accomplished, he applied a long plaster cast to the plaintiff’s left leg because he had multiple fractures of the ankle. He also treated the plaintiff for a fractured femur or thigh which occurred while he was wearing the cast; as a result thereof he was hospitalized for fifty days.
Dr. Salatich has been the plaintiff’s treating physician since November, 1957. He asserted that an examination in August, 1959, reflected that the plaintiff’s foot and ankle were still swollen from the multiple ankle fracture he incurred as a result of the 1957 accidents. The fractured thigh also further disabled him. Dr. Salatich insisted that both the ankle and thigh injuries, independent of each other, have completely disabled the plaintiff. He stated that the ankle injury alone reduces the normal functioning efficiency of his body activity between 45'% and 50%.
To rebut this medical testimony, the defendants requested the appearance of Dr. Ward Turner, a general practitioner, who initially treated the plaintiff. He related that the July 1957 accident merely produced a contusion of the left ankle and x-rays taken at the time revealed no fracture. He said that he treated the plaintiff twice after the accident of August 28, 1957, despite the plaintiff’s statement that the company refused to send him to Dr. Turner thereafter. The doctor’s records reflect that the plaintiff was treated for a contusion of the left toe.
Dr. Irving Redler, an orthopedist, examined the plaintiff on the defendants’ behalf *246 in December of 1957, at which time the plaintiff’s left leg was in a cast. He testified that an x-ray showed an ankle fracture that was healing well and that the plaintiff’s toes which were protruding from the cast, were not swollen. He again saw the plaintiff at Charity Hospital in February of 1958, where he was undergoing treatment for a fractured thigh. An x-ray taken by hospital radiologists revealed that the fractured ankle had completely healed, according to Dr. Redler, and further, that his left foot was not swollen and did not pain the plaintiff when the doctor manipulated it in order to determine the condition of his ankle. Dr. Redler again examined him on June 17, 1958, and observed that the ankle was swollen at that time. He attributed this swelling to the immobilization of his leg resulting from the thigh fracture and found that the fractured ankle was completely healed.
Dr. Irving Cahen, an orthopedic surgeon, also appeared to testify on the defendants’ behalf. He first examined the plaintiff on February 6, 1959, at the mutual request of the plaintiff and the defendant insurer. On that date x-rays were taken which reflected that the plaintiff had incurred an ankle fracture which had healed. The doctor stated the plaintiff’s complaints were excessive, and in explanation thereof, asserted that he visited the office on three occasions in an intoxicated condition. In May, 1959, Dr. Cahen’s examination disclosed no swelling of the ankle and no restriction of motion nor instability resulting from the old fracture.
The consensus of opinion emanating from the defendants’ medical experts was to the effect that the disability incurred by the plaintiff was caused by the fractured femur in the thigh and was not, in any way, related to the minor ankle injuries.
From the foregoing evidence, the trial judge drew the conclusion that the plaintiff “has failed to show by a reasonable preponderance of the evidence that the injuries suffered by him on January 3, 1958, were in any way caused by the injuries suffered by him during his employment,” and accordingly dismissed his suit for further compensation benefits.
Counsel for plaintiff primarily contends that the trial judge erred in failing to find that the plaintiff’s summer injuries ultimately resulted in his having to wear a long leg plaster cast, and the presence of the cast on his leg was in the last analysis responsible for the fall which caused him to fracture his femur, which, all the medical experts agree has produced a residual disability. He further argues that the lower court improperly sustained the defendants’ objection to the plaintiff’s testimony relating to the accident of January 3, 1958.
After reviewing the record, we find no error in the judgment rendered herein. In order for the plaintiff to establish that his leg was in a cast as a result of his two injuries on the job, it was first necessary that he establish that they produced the fracture. The trial judge in his reasons for judgment indicated he was of the opinion that the plaintiff’s testimony was not truthful. While plaintiff asserted he was not treated for a second accident by Dr. Turner, the doctor’s records indicate that he was treated satisfactorily and later discharged. Further, plaintiff’s statement that he attempted to work with crutches to aid him was not attested to by any other witness, nor was it proved by any testimony other than his own that he assumed lighter duties after the accident. In addition to this, the plaintiff did not consult Dr. Salatich until one month after Kaiser discharged him and we, like the trial judge, cannot conceive of any person incurring a fractured ankle and not requiring treatment therefor until two and one half months after the injury was sustained.
We are unable to find reversible error in the trial judge’s refusal to attach much credence to the plaintiff’s “highly questionable” testimony, it likewise taxed our credulity, and we are therefore compelled to conclude that the plaintiff’s dis *247 ability was actually caused by a fractured femur of the left leg which was incurred long after he terminated his employment with the defendant construction company.
While it is true that the rules of evidence are relaxed in compensation cases and are construed liberally in favor of the injured workman, this does not mean that he is not required to prove by a preponderance of the evidence that his disability resulted from a job-connected injury; since he has utterly failed to accomplish this objective, the case, must of necessity, be dismissed.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. The plaintiff was killed in an automobile accident on December 17, 1961, the day before this matter was argued on appeal and his widow, Lela S. Bobo, and his son. Brace S. Bobo, filed appropriate pleadings to be substituted as parties plaintiff.

. Plaintiff sued for $14,000, representing compensation payments of $35 per week for a period of 400 weeks, less a credit of $3395, which was the total amount received by him at the rate of $35 per week for 97 weeks.

. Plaintiff bad sued the defendants on two previous occasions and both suits were dismissed when the defendants agreed to reinstate compensation payments. The defendants further agreed to pay $905 of medical bills for services rendered to the plaintiff by Dr. Blaise Salatich when the second suit was dismissed.

. While the defendants appealed and answered the appeal, they stipulated in open court that the judgment was correct in all respects.